UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SMITH,

    Plaintiff,

vs.

UNIFIED STATES OF MICHIGAN, a
public university/corporate body politico,

    Defendant.

Case No.

Hon.

_____/
SCHWARTZ LAW FIRM, P.C.
By:  Mary A. Mahoney (P41568)
      Jay A. Schwartz (P45268)
      Ian Dickinson (P75261)
Attorneys for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400
_____/

## COMPLAINT

NOW COMES Plaintiff, MICHAEL SMITH, by and through his attorneys, Schwartz Law Firm, P.C., and for his Complaint, states as follows:

## JURISDICTION AND PARTIES

1. This is an action to enforce civil rights arising out of Plaintiff's employment relationship with Defendant, pursuant §107(a) of the Americans with Disabilities Act (ADA), 42 USC 12117, which incorporates by reference §706 of Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e-5.

2. This court has jurisdiction pursuant to 42 USC 2000e-5 and 28 USC 1331, 1343(4).

3. Plaintiff is a resident of the State of Michigan, currently residing in the City of Norton Shores, Muskegon County.

4. Defendant is a public state research university that does business in the Eastern District of Michigan, specifically in this case in the County of Washtenaw, State of Michigan, and is subject to the jurisdiction of this court.

5. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

6. Defendant is a *person* within the meaning of §101(7) of the ADA, 42 USC 12111(7), and §701 of Title VII of the Civil Rights Act of 1964, 42 USC 2000e.

7. Defendant meets all of the requirements for employer status under the ADA, 42 USC 12111(5)(A), and is also a covered entity within the meaning of 42 USC §12111(2) and 29 CFR §1630.2.

8. Plaintiff filed a timely charge of employment discrimination on the basis of disability with the EEOC within 300 days of the commission of the unlawful employment practice alleged herein.

9. Plaintiff received notification of his right to sue from EEOC on or after June 30, 2016, and has filed this Complaint within 90 days of receiving notice of his right to sue.

## BACKGROUND FACTS

10. On or about June 14, 2004, Plaintiff became employed by Defendant as a Construction Inspector II.

11. Plaintiff is an individual with a disability within the meaning of 42 USC §12102. At the time of his discharge, Plaintiff had a physical disability that substantially limited, at minimum, his major life activities of standing, sitting, lifting, climbing on ladders, and concentrating.

12. Plaintiff began working for Defendant as a Construction Manager in June, 2004, and remained continuously employed in that position, as a Construction Manager Intermediate, then as a Plan Reviewer for Commissioning and Plan Review, until he was involuntarily placed on medical disability retirement on or about July 24, 2015.

13. Plaintiff consistently performed his duties in his position(s) with Defendant in a satisfactory/better than satisfactory manner.

14. In August, 2013, Plaintiff was diagnosed with breast cancer, and he applied for and received approval for a protected unpaid leave of absence under the

3

Family and Medical Leave Act in order to undergo a modified radical mastectomy on September 11, 2013, followed by a course of chemotherapy.

15. Plaintiff returned to work on January 6, 2014 on a limited schedule due to continuing radiation treatment associated with his breast cancer diagnosis.

16. Following his radiation treatment, Plaintiff returned to a full-time work schedule, while beginning hormone therapy. During this period, Plaintiff also experienced some leg cramps (affecting his ability to sit for extended periods), dizziness, headaches (ranging from moderate to migraine), and memory issues.

17. Plaintiff continued treatment with his oncologist in order to determine the cause of the additional symptoms, and continued to work a full-time schedule.

18. During this period of time in 2014, Plaintiff's supervisor, Ken Birringer ("Birringer"), made no complaints about the quantity or quality of Plaintiff's work, either verbally or in writing.

19. In June, 2014, Plaintiff received a performance evaluation from his supervisor, Birringer, which performance evaluation was disastrous and led to Plaintiff being placed on a 90-day Performance Improvement Plan. Additionally, Plaintiff's flexible work schedule (which had accommodated his disability) was eliminated, and this was the first time that Plaintiff was informed that he was in danger of losing his job.

20. Plaintiff's performance evaluation made no mention of a commendation he had received in connection with a project, which Plaintiff learned of when he contacted individuals for whom he had done work to ask if they had problems with his work. Plaintiff's supervisor made no mention of this accolade.

21. The following day, Plaintiff sought assistance through the University's Faculty and Staff Assistance Program ("FASAP"), and in doing so, he disclosed his health problems and the mental anguish and depression that had resulted from the negative performance review. Plaintiff was advised to write a response to the negative evaluation, and he did so.

22. Defendant's FASAP referred Plaintiff to counseling services. As a result of the combination of his medical challenges and his mental state, it was recommended that Plaintiff take a medical leave of absence until September, 2014. Plaintiff was advised that his Performance Improvement Plan would begin when he returned to work.

23. Plaintiff returned to work on reduced hours in September, 2014, and began working with a University Occupational Therapist for accommodations, and certain specific accommodations were recommended.

24. These accommodations, including without limitation, a sit/stand workstation, cubicle door, Life Scribe Pen, remote tool to use for access to view

5

ceiling spaces, and the like, were questioned and delayed by Plaintiff's supervisor and other department supervisors.

25. While Plaintiff awaited approval and implementation of necessary accommodations, he was subjected to scrutiny, monitoring and recordkeeping that were different from and far more onerous than were encountered by any of his similarly situated co-workers. The scrutiny by Plaintiff's supervisor included interrogating his co-workers about his whereabouts.

26. Plaintiff attended numerous meetings with the Occupational Therapist and his supervisor wherein Plaintiff's accommodations, performance expectations and job duties were discussed; notwithstanding these discussions, Plaintiff's supervisor continued to focus on comparing Plaintiff's production to that of the other, higher-paid co-worker who had consistently worked approved and unapproved overtime hours before and during the time-frame of Plaintiff's disability. Plaintiff had previously been denied overtime when this same co-worker had a temporary disability in 2011.

27. On July 24, 2015, after months of attempting to perform his duties with increased scrutiny and delays in providing recommended accommodations, Plaintiff was advised at a "stakeholders' meeting" that the University had decided to place him on medical retirement.

28. At no time was Plaintiff given the option to remain working in lieu of going on medical retirement.

29. At no time was Plaintiff given the option of seeking other positions at the University that would accommodate his restrictions and allow him to continue working.

30. On July 22, 2015, the U.S. Department of Justice announced the filing of a Complaint and Consent Decree against the Defendant alleging violations of the Americans with Disabilities Act ("ADA"), which required the Defendant to offer employees with disabilities transfers or reassignments to equivalent or lesser vacant positions for which the employees are qualified, and to disseminate notice of policy changes incorporating the provisions of the Consent Decree to new and existing employees as specified therein.

31. Notwithstanding the Defendant's knowledge that the Consent Decree was being filed, Defendant's treatment of Plaintiff's situation and disability was not in conformity with the requirements of the Consent Decree.

32. Plaintiff's involuntary medical retirement has continued to cause Plaintiff to suffer mental anguish and other damages as more fully described herein.

## COUNT I

## DISABILITY DISCRIMINATION

## TITLE I OF THE AMERICANS WITH DISABILITIES ACT

33. Plaintiff incorporates by reference paragraphs 1 through 32.

34. At all material times, Plaintiff was an individual with a disability within the meaning of §3(2) of the ADA, 42 USC 12102(1). Specifically, Plaintiff has a physical impairment that substantially limits one or more of his major life activities, as described above.

35. Plaintiff was an individual with a disability within the meaning of 42 USC 12102(2), because he was regarded by Defendant as having a disability, and therefore regarded as substantially limited in one or more major life activities.

36. Title I of the ADA, 42 USC 12111, requires that Defendant provide reasonable accommodations to otherwise qualified employees, such as Plaintiff with disabilities, including but not limited to transfer or reassignment to vacant positions for which the individual is qualified within the Defendant's organization.

37. Plaintiff is an individual who can perform the essential functions of his job as a Construction Project Manager for Defendant with or without accommodation.

38. Plaintiff requested and was approved for accommodations, such as the job aids detailed above, from Defendant.

39. Plaintiff was subjected to unlawful discrimination by his supervisors, including harassment, increased scrutiny, increased monitoring, questioning and delays regarding implementation of reasonable accommodations by supervisors, and forced retirement for medical reasons.

40. As a direct result of Defendant's discriminatory actions, Plaintiff was summarily forced from his position with Defendant and placed into involuntary medical retirement.

41. The reasons given to Plaintiff to justify his termination were pretextual insofar as they were not accurate and/or were not sufficient to justify his forced retirement.

42. The Defendant did not offer Plaintiff the opportunity to transfer or be reassigned to another position at the University for which he was qualified, as required by the Consent Decree which was entered simultaneously with Plaintiff's involuntary medical retirement.

43. As such, the Defendant failed to provide Plaintiff a reasonable accommodation, including transfer or reassignment, where such an accommodation was available.

44. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, specifically, potential loss of health care coverage that is critical to his

9

survival, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Legal relief:

    a. a judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

    b. compensatory damages in whatever amount he is found to be entitled;

    c. punitive and exemplary damages commensurate with the wrong and Defendant's ability to pay;

    d. an award of interest, costs, and reasonable attorney fees.

2. Equitable relief:

    a. an order reinstating Plaintiff to the position he would have held if there had been no discrimination and retaliation by Defendant;

    b. an injunction prohibiting any further acts of retaliation or discrimination;

    c. an award of interest, costs, and reasonable attorney fees;

    d. whatever other equitable relief appears appropriate at the time of trial.

## COUNT II

## DISABILITY DISCRIMINATION RETALIATION

45. Plaintiff incorporates by reference paragraphs 1 through 44.

46. At all material times, Plaintiff was a qualified individual as that term is defined in the ADA, 42 USC 12111(8), and was an individual who can perform the essential functions of his job as a Construction Project Manager with or without reasonable accommodations.

47. At all relevant times, Plaintiff was an individual with a disability, as that term is defined by and within the meaning of the ADA, 42 USC 12102, insofar as he has a physical impairment, has a record of the impairment, and was regarded by Defendant as having the impairment.

48. Despite requests for, and approval from the University's ADA coordinator and occupational therapist for reasonable accommodations, Plaintiff's supervisors continued to question his accommodations and delayed implementation of the accommodations, in order to adversely affect Plaintiff's job performance.

49. Plaintiff's supervisors continually questioned his approved accommodations, scrutinized his daily performance in a manner not experienced by any other non-disabled co-workers, required Plaintiff to sign-in and sign-out in the performance of his duties (which was not required of anyone else in Plaintiff's

11

department), administered an unfair and poor performance evaluation, placed Plaintiff on a Performance Improvement Plan, criticized his productivity, and otherwise harassed, demeaned and belittled Plaintiff because of his disability.

50. Defendant failed and/or refused to place Plaintiff into any vacant position for which he was qualified, instead forcing him to involuntarily take a medical retirement.

51. Plaintiff's disability was a determining factor in Defendant's decision to force Plaintiff to retire and preclude him from continuing to work, and in direct retaliation for Plaintiff's attempts to exercise his federally protected rights under ADA.

52. The actions of Defendant and its agents, representatives and employees were intentional and in disregard for the rights and sensibilities of Plaintiff.

53. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits, specifically, potential loss of health care coverage that is critical to his survival, and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Legal relief:

    a. a judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

    b. compensatory damages in whatever amount he is found to be entitled;

    c. exemplary damages commensurate with the wrong and Defendant's ability to pay;

    d. an award of interest, costs, and reasonable attorney fees.

2. Equitable relief:

    a. an order reinstating Plaintiff to the position he would have held if there had been no discrimination and retaliation by Defendant;

    b. an injunction prohibiting any further acts of retaliation or discrimination;

    c. an award of interest, costs, and reasonable attorney fees;

    d. whatever other equitable relief appears appropriate at the time of trial.

SCHWARTZ LAW FIRM, P.C.

By: /s/ Mary A. Mahoney
Mary A. Mahoney (P41568)
Attorney for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan 48331
(248) 553-9400

Dated: September 27, 2016

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SMITH,

    Plaintiff,

vs.                                      Case No.

                                        Hon.

UNIVERSITY OF MICHIGAN, a
public university/corporate body politico,

    Defendant.
_____/
SCHWARTZ LAW FIRM, P.C.
By:  Mary A. Mahoney (P41568)
       Jay A. Schwartz (P45268)
       Ian Dickinson (P75261)
Attorneys for Plaintiff
37887 West Twelve Mile Road, Suite A
Farmington Hills, Michigan  48331
(248) 553-9400
_____/

## **PLAINTIFF'S JURY DEMAND**

NOW COMES Plaintiff, Michael Smith, by and through his attorney, SCHWARTZ LAW FIRM, P.C., and hereby demands a trial by jury of the within cause.

                                        SCHWARTZ LAW FIRM, P.C.

                                        By: /s/ Mary A. Mahoney
                                            Mary A. Mahoney (P41568)
                                            Attorney for Plaintiff
                                            37887 West Twelve Mile Road, Suite A
                                            Farmington Hills, Michigan  48331
Dated: September 27, 2016           (248) 553-9400